**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CALEB CHANCE, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NETCAPITAL INC., COREEN KRAYSLER, CECILIA LENK, JOHN FANNING, and MARTIN KAY,<br><br>Defendants. | **Case No:**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Caleb Chance ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, among other things, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, public filings, wire and press releases published by and regarding Netcapital, Inc. ("Netcapital" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Netcapital securities between December 15, 2021 and September 3, 2026, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by

Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act"). [1]

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants (defined below), directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Netcapital securities during the Class Period and was economically damaged thereby.

---

[1] Unless otherwise stated, all emphasis is added and internal citations are omitted, and formatting from the SEC Complaint (defined below) may be altered.

7. Defendant Netcapital describes itself as a company that, through its subsidiaries, operates an SEC-registered funding portal for small companies raising investor capital through Internet-based crowdfunding under Regulation Crowdfunding, and provides consulting services to companies seeking to conduct crowdfunding securities offerings.

8. As described below, Netcapital used sham transactions involving its portfolio Companies (the "Portfolio Companies") to create the false appearance of revenue.

9. Defendant Netcapital is incorporated in Utah, and its head office is located at 1 Lincoln St., Boston, Massachusetts 02111.

10. Netcapital's common stock trades on The NASDAQ Stock Market LLC (the "NASDAQ") under the ticker symbol "NCPL".

11. Defendant Martin Kay ("Kay") served as the Company's Chief Executive Officer ("CEO") from January 3, 2023 to December 3, 2025 and on the Board of Directors (the "Board") as well during that time.

12. Defendant Cecilia Lenk ("Lenk") preceded defendant Kay as the Company's Chief Executive Officer ("CEO") between the beginning of the Class Period and January 3, 2023.

13. Defendant Coreen Kraysler ("Kraysler") has served as the Company's Chief Financial Officer ("CFO") since September 2017.

14. Defendant John Fanning ("Fanning") is the husband of Defendant Kraysler and is the founding chairman and CEO of napster. He serves on Netcapital's advisory board. As the SEC alleged, John Fanning served as a control person of Netcapital, stating the following:

> ***During the Relevant Period, Fanning acted as a Netcapital officer and was involved in significant operational and strategic decisions, including Netcapital's efforts to raise capital***. At the same time, Fanning exercised control over the Portfolio Companies and owned significant amounts of their equity.

15. Defendants Kay, Lenk, Kraysler, and Fanning are collectively referred to herein as the "Individual Defendants."

16. Each of the Individual Defendants:

(a) directly participated in the management of the Company;

(b) was directly involved in the day-to-day operations of the Company at the highest levels;

(c) was privy to confidential proprietary information concerning the Company and its business and operations;

(d) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g) approved or ratified these statements in violation of the federal securities laws.

17. Netcapital is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

18. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Netcapital under *respondeat superior* and agency principles.

19. Defendant Netcapital and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements Issued During the Class Period

20. On December 14, 2021, the Company filed with the SEC its quarterly report on Form 10-Q for the quarter ending October 31, 2021 (the "FY22 Q2 Report"). Attached to the FY22 Q2 Report were certifications pursuant to SOX signed by Defendants Lenk and Kraysler attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

21. The FY22 Q2 Report contained the following statement:

> Our revenues for the three months ended October 31, 2021 increased by $468,658, or 64%, to $1,199,821, as compared to $731,164 reported for the six months ended October 31, 2020. ***The increase in revenues is attributable to an increase of $315,938 in non-cash revenue from the receipt of equity, offset by a decrease of $113,384 in consulting fees.*** Funding portal revenues also contributed to the increase in revenues in the six months ended October 31, 2021.

22. The statement in ¶ 21 was materially false and misleading at the time it was made because the reported revenue growth was driven by sham consulting revenue that Defendants knew or should have known about arising from purported agreements with companies ("Portfolio Companies") which were controlled by John Fanning ("Fanning"). The SEC Complaint alleges Fanning acted as a Netcapital officer and was involved in operational and strategic decisions while exerting control over the Portfolio Companies.

23. The FY22 Q2 Report contained the following statement about related party transactions:

> **Note 7 – Related Party Transactions**

The Company's majority shareholder, Netcapital Systems LLC, owns 1,671,360 shares of common stock, or 61.5% of the Company as of October 31, 2021. The Company has a demand note payable to Netcapital Systems LLC of $4,660 and a demand note payable to one of its managers of $3,200.

In addition, as of April 30, 2021, the Company accrued a payable of $3,817,516 for supplemental consideration owed in conjunction with its purchase of Netcapital Funding Portal Inc., which was reduced to $294,054 as of October 31, 2021, because of the issuance to 361,736 shares of common stock, valued at $3,523,462. In total, the Company owed its largest shareholder $298,714 and $3,822,116 as of October 31, 2021 and April 30, 2021, respectively.

The company paid its majority shareholder $157,429 and $107,429 in the six- and three-month periods ended October 31, 2021, respectively, for use of the software that runs the website www.netcapital.com.

Compensation to officers in the six- and three-month periods ended October 31, 2021 consisted of common stock valued at $101,327 and $8,396, respectively, and cash salary of $144,000 and $72,000, respectively. Compensation to officers in the six- and three-month periods ended October 31, 2020 consisted of common stock valued at $164,885 and $82,263 respectively, and cash wages of $138,462 and $72,000, respectively.

Compensation to a related party consultant in the six- and three-month periods ended October 31, 2021 consisted of common stock valued at $25,908 and $6,530 respectively, and cash wages of $30,000 and $15,000, respectively. Compensation to a related party consultant in the six- and three-month periods ended October 31, 2020 consisted of common stock valued at $38,757 and $19,379 respectively, and cash wages of $46,154 and $24,000, respectively. This consultant is also the controlling shareholder of Zelgor Inc. and $1,400,000 and $350,000 of the Company's revenues in the six- and three-month periods ended October 31, 2020 were from Zelgor Inc.

Compensation to managers of Netcapital Systems LLC in the six and three-month periods ended October 31, 2021 consisted of common stock valued at $19,378 and $0, respectively, and cash wages of $72,000 and $24,000, respectively. Compensation to managers of Netcapital Systems LLC in the six and three-month periods ended October 31, 2020 consisted of common stock valued at $38,757 and $19,379, respectively, and cash wages of $93,308 and $48,000, respectively.

The Company owes a director $16,680 as of October 31, 2021 and April 30, 2021, which is recorded as accounts payable, plus $15,000 in a non-interest-bearing note payable.

24. The statement in ¶ 23 was materially false and misleading at the time it was made because it did not disclose the agreements with Portfolio Companies Reper and Cust Corp or Fanning's control over those Companies.

25. On March 17, 2022, the Company filed with the SEC its quarterly report on Form 10-Q for the quarter ending January 31, 2022 (the "FY22 Q3 Report"). Attached to the FY22 Q3 Report were certifications pursuant to SOX signed by Defendants Lenk and Kraysler attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

26. The FY22 Q3 report contained the following statement:

> ***Our revenues for the three months ended January 31, 2022 increased by $533,714, or 42%, to $1,811,041, as compared to $1,277,327 reported for the three months ended January 31, 2021. The increase in revenues is attributable to an increase of $368,333, or 44%, in non-cash revenue from the receipt of equity and an increase of $94,791, or 38%, in portal fee revenues from our funding portal***. Funding portal revenues consist of a listing fee that we charge when an issuer signs an engagement letter to raise capital on our funding portal, and portal fees that are equal to 4.9% of the capital that was raised by the issuers.

27. The statement in ¶ 26 was materially false and misleading at the time it was made because the reported revenue growth was inflated by sham consulting revenue that Defendants knew or should have known about from the Portfolio Companies.

28. The FY22 Q3 Report contained the following statement about related party transactions:

> **Note 7 – Related Party Transactions**
>
> The Company's majority shareholder, Netcapital Systems LLC, owns 1,671,360 shares of common stock, or 57.7% of the Company's 2,896,844 outstanding shares as of January 31, 2022.
>
> The Company has a demand note payable to Netcapital Systems LLC of $4,660 and a demand note payable to one of its former managers of $3,200. In addition, as of April 30, 2021, the Company accrued a payable of $3,817,516 for supplemental

consideration owed in conjunction with its purchase of Netcapital Funding Portal Inc., which was reduced to $294,054 as of January 31, 2022, because of the issuance to 361,736 shares of common stock, valued at $3,523,462. Of the 361,736 shares that were issued, a total of 32,458 shares, representing a reduction in the payable amount of $346,821, were issued to managers of Netcapital Systems LLC, and 3,151 shares, representing a reduction in the payable amount of $30,691, were issued to our Chief Executive Officer.

Compensation to officers in the nine- and three-month periods ended January 31, 2022 consisted of common stock valued at $190,763 and $89,436, respectively, and cash salary of $217,688 and $73,688, respectively.

Compensation to officers in the nine- and three-month periods ended January 31, 2021 consisted of common stock valued at $301,783 and $86,417 respectively, and cash wages of $210,462 and $72,000, respectively. Compensation to a related party consultant in the nine- and three-month periods ended January 31, 2022 consisted of common stock valued at $25,908 and $0 respectively, and cash wages of $45,000 and $15,000, respectively.

Compensation to a related party consultant in the nine- and three-month periods ended January 31, 2021 consisted of common stock valued at $38,757 and $19,378 respectively, and cash wages of $46,154 and $24,000, respectively. This consultant is also the controlling shareholder of Zelgor Inc. and $1,400,000 and $0 of the Company's revenues in the nine- and three-month periods ended January 31, 2021 were from Zelgor Inc.

Compensation to employees who are also managers of Netcapital Systems LLC in the nine and three-month periods ended January 31, 2022 consisted of common stock valued at $19,378 and $0, respectively, and cash wages of $96,000 and $24,000, respectively.

Compensation to managers of Netcapital Systems LLC in the nine and three-month periods ended January 31, 2021 consisted of common stock valued at $58,135 and $19,378, respectively, and cash wages of $141,308 and $48,000, respectively.

As of January 31, 2022 and April 30, 2021, the Company has invested $240,080 and $122,914 in an affiliate, 6A Aviation Alaska Consortium, Inc., in conjunction with a land lease in an airport in Alaska.

Our Chief Executive Officer is also the Chief Executive Officer of 6A Aviation Alaska Consortium, Inc. In November 2021 we issued a member of our board of directors 10,000 shares of common stock, for board and audit committee services, valued at $100,000.

> The Company owes a director $16,680 as of January 31, 2022 and April 30, 2021, which is recorded as accounts payable, plus $15,000 in a non-interest-bearing note payable.

29. The statement in ¶ 28 was materially false and misleading at the time it was made because it did not disclose the agreements with Portfolio Companies Reper and Cust Corp or Fanning's control over those Companies.

30. On August 8, 2022, the Company filed with the SEC its annual report on Form 10-K for the fiscal year ending April 30, 2022 (the "FY22 Annual Report"). Attached to the FY22 Annual Report were certifications pursuant to SOX signed by Defendants Lenk and Kraysler attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

31. The FY22 Annual Report contained the following statement:

> ***Our revenues for fiscal 2022 increased by $759,832, or 16%, to $5,480,835 as compared to $4,721,003 reported for fiscal 2021. The increase in revenues is primarily attributable to increased revenues from our funding portal***, which recorded an increase of portal fees of $681,966, or 130% to $1,206,957 in fiscal 2022 as compared to $524,991 in fiscal 2021, in addition to an increase in listing fees of $92,500, or 31%, to $394,490 *is [sic]* fiscal 2022, as compared to $301,990 in fiscal 2021.

32. The statement in ¶ 31 was materially false and misleading at the time it was made because the reported revenue growth in the 2022 fiscal year was inflated by sham consulting revenue that Defendants knew or should have known about from the Portfolio Companies.

33. The FY22 Annual Report contained the following statement about related party transactions:

> **9. Related Party Transactions**
>
> The Company's majority shareholder, Netcapital Systems LLC, owns 1,671,360 shares of common stock, or 57.7% of the Company as of April 30, 2022. The Company has a demand note payable to Netcapital Systems LLC of $4,600 and a

demand note payable to one of its former managers of $3,200. In addition, as of April 30, 2021, the Company accrued a payable of $3,817,516 for supplemental consideration owed in conjunction with its purchase of Netcapital Funding Portal Inc., which was reduced to $294,054 as of April 30, 2022, because of the issuance to 361,736 shares of common stock, valued at $3,523,462. Of the 361,736 shares that were issued, a total of 32,458 shares, representing a reduction in the payable amount of $346,821, were issued to managers of Netcapital Systems LLC, and 3,151 shares, representing a reduction in the payable amount of $30,691, were issued to our Chief Executive Officer.

The company paid its majority shareholder $357,429 and $200,000 in the years ended April 30, 2022 and 2021, respectively, for use of the software that runs the website www.netcapital.com. The Company also had a sale of $15,000 for consulting services to its majority shareholder during fiscal 2022.

The Company received revenues of $39,360 and $660,486 for the years ended April 30, 2022 and 2021, respectively from ChipBrain, Inc. Our Chief Executive Officer is a member of the board of directors of ChipBrain, Inc. The Company owns 710,200 shares of ChipBrain, Inc., valued at $1,704,480.

Our Chief Executive Officer is a member of the board of directors of KingsCrowd Inc. The Company owns 3,815,745 shares of KingsCrowd Inc., valued at $3,815,745.

Our Chief Executive Officer is a member of the board of directors of Deuce Drone LLC. The Company owns 2,350,000 membership interest units of Deuce Drone LLC., valued at $2,350,000. The Company has notes receivable aggregating $152,000 from Deuce Drone LLC as of April 30, 2022.

Compensation expense to officers in the years ended April 30, 2022 and 2021 consisted of common stock valued at $190,763 and $353,907, respectively, cash compensation of $265,688 and $332,724, respectively, and options to purchase common stock valued at $3,147 and $0, respectively.

Compensation to a related party consultant in the years ended April 30, 2022 and 2021 consisted of common stock valued at $25,908 and $76,882, respectively, and cash compensation of $60,000 and $81,431, respectively. This consultant is also the controlling shareholder of Zelgor Inc., and the Company earned revenues from Zelgor Inc. of $5,500 and $1,400,000 in the years ended April 30, 2022 and 2021. The Company owns 1,400,000 shares of Zelgor Inc., valued at $1,400,000 and holds a note receivable of $50,000 as of April 30, 2022.

Compensation to the President of Netcapital Systems LLC amounted to $96,000 and $114,284 in the years ended April 30, 2022 and 2021, respectively.

> We owe Steven Geary, a director, $31,680 as of April 30, 2022 and 2021. This obligation is not interest bearing. $16,680 is recorded as a related party trade accounts payable and $15,000 as a related party note payable. We have no signed agreements for the indebtedness to Mr. Geary.
>
> The Company made an investment of $240,080 in an affiliate, 6A Aviation Alaska Consortium, Inc., in conjunction with a land lease in an airport in Alaska. Our Chief Executive Officer is also the Chief Executive Officer of 6A Aviation Alaska Consortium, Inc. As a result of the investment, the Company is a 19% owner of 6A Aviation Consortium Inc.
>
> As of April 30, 2022 and 2021, we owed $0 and $9,490 to a company controlled by one of our former directors. We paid cash compensation of $0 and $29,738 to this former director for the years ended April 30, 2022 and 2021, respectively.
>
> In November 2021, we issued a member of our Board 10,000 shares of common stock for his service as a member of our board and audit committee, valued at $100,000.
>
> On February 2, 2022, the Company granted to members of our Board an aggregate of 25,000 options to purchase shares of our common stock at an exercise price of $10.50 per share. An option to purchase 10,000 shares of common stock was granted to the Chairman of the Board and each of the three independent board members received an option to purchase 5,000 shares of common stock. The options vest on a monthly basis over 48 months and expire in 10 years.
>
> Coreen Kraysler, our Chief Financial Officer, has personally guaranteed a $500,000 promissory note from the U.S. Small Business Administration. The note bears interest at an annual rate of 3.75%, has a 30-year term, and monthly payments of $2,594 are scheduled to begin on June 17, 2022.
>
> The Company recorded $19,844 in revenues from a company that Cecilia Lenk, our Chief Executive Officer, serves as a member of the board of managers.

34. The statement in ¶ 33 was materially false and misleading at the time it was made because it did not disclose the agreements with Portfolio Companies Reper, Cust Corp., or NetWire, nor did they disclose Fanning's control over those Companies, since they were executed in the Company's 2022 fiscal year.

35. On September 12, 2022, Netcapital issued a press release entitled "Netcapital Inc. Announces Revenue Growth of 114% for First Quarter of Fiscal 2023." The press release highlighted "[r]evenue growth of 114% year-over-year" in the quarter ending July 31, 2022.

36. The statement in ¶ 35 was materially false and misleading at the time it was made because the reported revenue growth was inflated by the sham consulting revenue from agreements with the Portfolio Companies Defendants knew or should have known about.

37. On the same day, the Company filed with the SEC its quarterly report on Form 10-Q for the quarter ending July 31, 2022 (the "FY23 Q1 Report"). Attached to the FY23 Q1 Report were certifications pursuant to SOX signed by Defendants Lenk and Kraysler attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

38. The FY23 Q1 Report contained the following statement:

> ***Our revenues for the three months ended July 31, 2022, increased by $715,386, or 114%, to $1,340,573, as compared to $625,187 during the three months ended July 31, 2021. The increase in revenues was primarily attributed to an increase in consulting services for equity securities***, which amounted to $1,025,000 during the three months ended July 31, 2022, as compared to $50,000 during the three months ended July 31, 2021.

39. The statement in ¶ 38 was materially false and misleading at the time it was made because the reported revenue growth from an increase in consulting services was inflated by the sham consulting revenue from agreements with the Portfolio Companies Defendants knew or should have known about.

40. The FY23 Q1 Report contained the following statement about related party transactions:

**Note 7 – Related Party Transactions**

The Company's largest shareholder, Netcapital Systems LLC ("Systems"), owns 1,711,261 shares of common stock, or 40% of the Company's 4,272,677 outstanding shares as of July 31, 2022. The Company has a demand note payable to Netcapital Systems LLC of $4,660. In addition, as of April 30, 2022, the Company accrued a payable to Systems of $294,054 for supplemental consideration owed in conjunction with its purchase of Netcapital Funding Portal Inc., which was paid in full on July 14, 2022, with the issuance to Systems of 39,901 shares of the Company's common stock.

In total, the Company owed Systems $4,660 and $294,054 as of July 31, 2022 and April 30, 2022, respectively. The company paid Systems $150,000 and $50,000 in the three-month periods ended July 31, 2022 and 2021, respectively, for use of the software that runs the website www.netcapital.com.

The Company earned revenues of $26,500 and $0 for the three months ended July 31, 2022 and 2021, respectively from ChipBrain, Inc. Our Chief Executive Officer was formerly a member of the board of directors of ChipBrain, Inc. As of July 31, 2022 and April 30, 2022, the Company owned 710,200 shares of ChipBrain, Inc., valued at $1,704,480.

Our Chief Executive Officer is a member of the board of directors of KingsCrowd Inc. The Company sold 606,060 shares of KingsCrowd in June 2022 for proceeds of $200,000 and recorded a realized loss on the sale of the investment of $406,060. As of July 31, 2022 and April 30, 2022, the Company owned 3,209,685 and 3,815,745 shares of KingsCrowd Inc., valued at $3,209,685 and $3,815,745, respectively.

Our Chief Executive Officer is a member of the board of directors of Deuce Drone LLC. As of July 31, 2022 and April 30, 2022, the Company owns 2,350,000 membership interest units of Deuce Drone LLC., valued at $2,350,000. The Company has notes receivable aggregating $152,000 from Deuce Drone LLC as of July 31, 2022 and April 30, 2022.

Compensation to officers in the three-month periods ended July 31, 2022 and 2021 consisted of stock-based compensation valued at $3,664 and $92,931, respectively, and cash salary of $90,000 and $101,538, respectively.

During the three months ended July 31, 2022, we paid $12,019 to a related party to retire a note payable of $3,200 and expenses payable of $8,819.

Compensation to a related party consultant in the three-month periods ended July 31, 2022 and 2021 consisted of common stock valued at $0 and $19,378 respectively, and cash wages of $16,154 and $25,846, respectively. This consultant is also the controlling shareholder of Zelgor Inc. and $11,000 and $0 of the Company's revenues in the three-month periods ended July 31, 2022 were from Zelgor Inc.

> As of July 31, 2022 and April 30, 2022, the Company owned 1,400,000 shares which are valued at $1,400,000. As of July 31, 2022 and April 30, 2022, the Company has invested $240,080 in an affiliate, 6A Aviation Alaska Consortium, Inc., in conjunction with a land lease in an airport in Alaska. Our Chief Executive Officer is also the Chief Executive Officer of 6A Aviation Alaska Consortium, Inc.
>
> We owe Steven Geary, a director, $31,680 as of July 31, 2022 and April 30, 2022. This obligation is not interest bearing. $16,680 is recorded as a related party trade accounts payable and $15,000 as a related party note payable. We have no signed agreements for the indebtedness to Mr. Geary.

41. The statement in ¶ 40 was materially false and misleading at the time it was made because it did not disclose the agreement with Portfolio Company Dark or Fanning's control over that Company.

42. On March 16, 2023, the Company filed with the SEC its quarterly report on Form 10-Q for the quarter ending January 31, 2023 (the "FY23 Q3 Report"). Attached to the FY23 Q3 Report were certifications pursuant to SOX signed by Defendants Kay and Kraysler attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

43. The FY23 Q3 report contained the following statement:

> Our revenues for the three months ended January 31, 2023, increased by $449,373, or approximately 25%, to $2,260,414, as compared to $1,811,041 during the three months ended January 31, 2022. ***The increase in revenues was primarily attributed to an increase in consulting services for equity securities***, which amounted to $1,950,000 during the three months ended January 31, 2023, as compared to $1,200,000 during the three months ended January 31, 2022.

44. The statement in ¶ 43 was materially false and misleading at the time it was made because the reported revenue growth from an increase in consulting services was inflated by the sham consulting revenue from agreements with the Portfolio Companies Defendants knew or should have known about.

45. The FY23 Q3 Report contained the following statement about related party transactions:

**Note 7 – Related Party Transactions**

The Company's largest shareholder, Netcapital Systems LLC ("Systems"), owns 1,711,261 shares of common stock, or 28% of the Company's 6,071,777 outstanding shares as of January 31, 2023. As of April 30, 2022, the Company accrued a payable to Systems of $294,054 for supplemental consideration owed in conjunction with its purchase of Netcapital Funding Portal Inc., which was paid in full on July 14, 2022, with the issuance to Systems of 39,901 shares of the Company's common stock. The Company provided professional services to Systems in the three and nine months ended January 31, 2023 and recorded revenue of $4,660 for those services.

In total, the Company owed Systems $0 and $294,054 as of January 31, 2023 and April 30, 2022, respectively. The company paid Systems $100,000 and $300,000 in the three and nine months ended January 31, 2023, respectively, and $100,000 and $257,429 in the three and nine months ended January 31, 2022, respectively, for use of the software that runs the website www.netcapital.com.

The Chief Executive Officer of our wholly owned subsidiary, Netcapital Advisors Inc., is a member of the board of directors of KingsCrowd Inc. The Company sold 606,060 shares of KingsCrowd in June 2022 for proceeds of $200,000 and recorded a realized loss on the sale of the investment of $406,060. As of January 31, 2023 and April 30, 2022, the Company owned 3,209,685 and 3,815,745 shares of KingsCrowd Inc., valued at $3,209,685 and $3,815,745, respectively.

The Chief Executive Officer of our wholly owned subsidiary, Netcapital Advisors Inc. is a member of the board of directors of Deuce Drone LLC. As of January 31, 2023 and April 30, 2022, the Company owns 2,350,000 membership interest units of Deuce Drone LLC., valued at $2,350,000. The Company has notes receivable aggregating $152,000 from Deuce Drone LLC as of January 31, 2023 and April 30, 2022.

Compensation to officers in the three- and nine-month periods ended January 31, 2023 consisted of stock-based compensation valued at $32,382 and $44,464, respectively, and cash salary of $141,769 and $391,384, respectively. Compensation to officers in the three- and nine-month periods ended January 31, 2022 consisted of stock-based compensation valued at $89,436 and $190,763, respectively, and cash salary of $73,688 and $217,688, respectively.

During the three- and nine-month periods ended January 31, 2023, we paid $0 and $12,019 to a related party to retire a note payable of $3,200 and expenses payable of $8,819.

> Compensation to a related party consultant in the three- and nine-month periods ended January 31, 2023 and 2022 consisted of cash wages of $15,000 and $45,000, respectively, and stock-based compensation of $0 and $25,908 for the three and nine months ended January 31, 2022, respectively. This consultant is also the controlling shareholder of Zelgor Inc. and $16,500 and $44,000 of the Company's revenues in the three and nine months ended January 31, 2023 were from Zelgor Inc. As of January 31, 2023 and April 30, 2022, the Company owned 1,400,000 shares which are valued at $1,400,000.
>
> As of January 31, 2023 and April 30, 2022, the Company has invested $240,080 in an affiliate, 6A Aviation Alaska Consortium, Inc., in conjunction with a land lease in an airport in Alaska. The Chief Executive Officer of our wholly owned subsidiary, Netcapital Advisors Inc., is also the Chief Executive Officer of 6A Aviation Alaska Consortium, Inc.
>
> We owe Steven Geary, a director, $31,680 as of January 31, 2023 and April 30, 2022. This obligation is not interest bearing. $16,680 is recorded as a related party trade accounts payable and $15,000 as a related party note payable. We have no signed agreements for the indebtedness to Mr. Geary.
>
> In January 2023 we granted stock options to purchase an aggregate of 1,600,000 shares of our common stock to four related parties as follows: Our Chief Executive Officer, 1,000,000 shares; our Chief Financial Officer, 200,000 shares; our Founder, 200,000 shares; and a director of one of our subsidiaries, 200,000 shares. The options have an exercise price of $1.43, vest monthly on a straight-line basis over a 4-year period and expire in 10 years.

46. The statement in ¶ 45 was materially false and misleading at the time it was made because it did not disclose the agreements with Portfolio Companies CupCrew, HeadFarm, and Countsharp, nor did they disclose Fanning's control over those Companies.

47. On July 26, 2023, the Company filed with the SEC its annual report on Form 10-K for the year ending April 30, 2023 (the "FY23 Annual Report"). Attached to the 2023 Annual Report were certifications pursuant to SOX signed by Defendants Kay and Kraysler attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

48. The FY23 Annual Report contained the following statement:

> ***Our revenues for fiscal 2023 increased by $3,013,150, or 55%, to $8,493,985 as compared to $5,480,835 reported for fiscal 2022. The increase in revenues is attributable to increased revenues from consulting services for equity securities,*** which recorded an increase in fees of $3,730,000, or 111% to $7,105,000 in fiscal 2023 as compared to $3,375,000 in fiscal 2022.

49. The statement in ¶ 48 was materially false and misleading at the time it was made because the reported revenue growth in the 2023 fiscal year was inflated by sham consulting revenue that Defendants knew or should have known about from the Portfolio Companies.

50. The FY23 Annual Report contained the following statement about related party transactions:

> **9. Related Party Transactions**
>
> The Company's largest shareholder, Netcapital Systems LLC ("Systems"), owns 1,711,261 shares of common stock, or 26.6% of the Company's 6,440,527 outstanding shares as of April 30, 2023. As of April 30, 2022, the Company accrued a payable to Systems of $294,054 for supplemental consideration owed in conjunction with its purchase of Netcapital Funding Portal Inc., which was paid in full on July 14, 2022, with the issuance to Systems of 39,901 shares of the Company's common stock. The Company provided professional services to Systems in the years ended April 30, 2023 and 2022 and recorded revenue of $4,660 and $15,000, respectively, for those services.
>
> In total, the Company owed Systems $0 and $294,054 as of April 30, 2023 and 2022, respectively. The company paid Systems $430,000 and $357,429 in the years ended April 30, 2023 and 2022, respectively, for use of the software that runs the website www.netcapital.com.
>
> The Chief Executive Officer of our wholly owned subsidiary, Netcapital Advisors Inc., is a member of the board of directors of KingsCrowd Inc. The Company sold 606,060 shares of KingsCrowd in June 2022 for proceeds of $200,000 and recorded a realized loss on the sale of the investment of $406,060. As of April 30, 2023 and 2022, the Company owned 3,209,685 and 3,815,745 shares of KingsCrowd Inc., valued at $3,209,685 and $3,815,745, respectively.
>
> The Chief Executive Officer of our wholly owned subsidiary, Netcapital Advisors Inc. is a member of the board of directors of Deuce Drone LLC. As of April 30, 2023 and 2022, the Company owned 2,350,000 membership interest units of Deuce Drone LLC., valued at $2,350,000. The Company has notes receivable aggregating $152,000 from Deuce Drone LLC as of April 30, 2023 and 2022.

Compensation expense to officers in the years ended April 30, 2023 and 2022 consisted of common stock valued at $0 and $190,763, respectively, cash compensation of $598,077 and $265,688, respectively, and options to purchase common stock valued at $137,994 and $3,147, respectively.

Compensation to a related party consultant in the years ended April 30, 2023 and 2022 consisted of common stock valued at $0 and $25,908, respectively, and cash compensation of $60,039 and $60,000, respectively. This consultant is also the controlling shareholder of Zelgor Inc., and the Company earned revenues from Zelgor Inc. of $66,000 and $5,500 in the years ended April 30, 2023 and 2022. The Company owns 1,400,000 shares of Zelgor Inc., valued at $1,400,000 and holds a note receivable of $50,000 as of April 30, 2023.

Cash compensation to the President of Netcapital Systems LLC amounted to $184,808 and $96,000, and stock-based compensation amounted to $25,927 and $0, in the years ended April 30, 2023 and 2022, respectively.

We owe Steven Geary, a director, $31,680 as of April 30, 2023 and 2022. This obligation is not interest bearing. $16,680 is recorded as a related party trade accounts payable and $15,000 as a related party note payable. We have no signed agreements for the indebtedness to Mr. Geary.

The Company made an investment of $240,080 in an affiliate, 6A Aviation Alaska Consortium, Inc., in conjunction with a land lease in an airport in Alaska. Our Chief Executive Officer is also the Chief Executive Officer of 6A Aviation Alaska Consortium, Inc. As a result of the investment, the Company is a 19% owner of 6A Aviation Consortium Inc.

In November 2021, we issued a member of our Board 10,000 shares of common stock for his service as a member of our board and audit committee, valued at $100,000.

On February 2, 2022, the Company granted members of our board of directors an aggregate of 25,000 options to purchase shares of our common stock at an exercise price of $10.50 per share. An option to purchase 10,000 shares of common stock was granted to the Chief Executive Officer of Netcapital Advisors Inc., who is also a director, and each of the three independent board members received an option to purchase 5,000 shares of common stock. The options vest on a straight-line basis over 48 months and expire in 10 years. On April 25, 2023, the Company also granted the same four members of our board of directors an aggregate of 80,000 options, or 20,000 for each board member, to purchase shares of our common stock at an exercise price of $1.40 per share. The options vest monthly on a straight-line basis over a 4-year period and expire in 10 years.

In January 2023 we granted stock options to purchase an aggregate of 1,600,000 shares of our common stock to four related parties as follows: Our Chief Executive

> Officer, 1,000,000 shares; our Chief Financial Officer, 200,000 shares; our Founder, 200,000 shares; and a director of one of our subsidiaries, 200,000 shares. The options have an exercise price of $1.43, vest monthly on a straight-line basis over a 4-year period and expire in 10 years.
>
> Coreen Kraysler, our Chief Financial Officer, has personally guaranteed a $500,000 promissory note from the U.S. Small Business Administration. The note bears interest at an annual rate of 3.75%, has a 30-year term, and monthly payments of $2,594 began on December 17, 2022.

51. The statement in ¶ 50 was materially false and misleading at the time it was made because it did not disclose the agreements with Portfolio Companies Dark, CupCrew, HeadFarm, or Countsharp, nor did they disclose Fanning's control over those Companies, since they were executed in the Company's 2023 fiscal year.

52. On September 14, 2023, the Company filed with the SEC its quarterly report on Form 10-Q for the quarter ending July 31, 2023 (the "FY24 Q1 Report"). Attached to the FY24 Q1 Report were certifications pursuant to SOX signed by Defendants Kay and Kraysler attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

53. The FY24 Q1 report contained the following statement:

> ***Our revenues for the three months ended July 31, 2023, increased by $179,236, or 13%, to $1,519,809, as compared to $1,340,573 during the three months ended July 31, 2022. The increase in revenues was primarily attributed to an increase of 335% in the portal fees that we earn from issuers that sell equity securities on our funding portal, which amounted to $221,856 during the three months ended July 31, 2023, as compared to $51,000 during the three months ended July 31, 2022***. Additionally, funding portal revenue from new issuers signing engagement letters increased by $26,500, or 21%, to $154,000 for the three months ended July 31, 2023 as compared to $127,500 for the three months ended July 31, 2022.

54. The statement in ¶ 53 was materially false and misleading at the time it was made because the reported revenue growth was inflated by the sham consulting revenue from agreements with the Portfolio Companies Defendants knew or should have known about.

55. The FY24 Q1 Report contained the following statement about related party transactions:

**Note 7 – Related Party Transactions**

The Company's largest shareholder, Netcapital Systems LLC ("Systems"), owns 1,711,261 shares of common stock, or 18% of the Company's 9,434,132 outstanding shares as of July 31, 2023. The company paid Systems $0 and $150,000 in the three-month periods ended July 31, 2023 and 2022, respectively, for use of the software that runs the website www.netcapital.com.

The Chief Executive Officer of Netcapital Advisors Inc., ("Advisors"), our wholly owned subsidiary, is a member of the board of directors of KingsCrowd Inc. The Company sold 606,060 shares of KingsCrowd in June 2022 for proceeds of $200,000 and recorded a realized loss on the sale of the investment of $406,060 during the three months ended July 31, 2022. As of July 31, 2023 and April 30, 2023, the Company owned 3,209,685 shares of KingsCrowd Inc., valued at $3,209,685.

The Chief Executive Officer of Advisors is a member of the board of directors of Deuce Drone LLC. As of July 31, 2023 and April 30, 2022, the Company owns 2,350,000 membership interest units of Deuce Drone LLC., valued at $2,350,000. The Company has notes receivable aggregating $152,000 from Deuce Drone LLC as of July 31, 2023 and April 30, 2023.

Compensation to officers in the three-month periods ended July 31, 2023 and 2022 consisted of stock-based compensation valued at $93,532 and $3,664, respectively, and cash salary of $244,317 and $90,000 respectively.

During the three months ended July 31, 2022, we paid $12,019 to a related party to retire a note payable of $3,200 and expenses payable of $8,819. Compensation to a related party consultant in the three-month periods ended July 31, 2023 and 2022 consisted of cash wages of $16,163 and $16,154, respectively. This consultant is also the controlling shareholder of Zelgor Inc. and $16,500 and $11,000 of the Company's revenues in the three-month periods ended July 31, 2023 and 2022, respectively, were from Zelgor Inc.

As of July 31, 2023 and April 30, 2023, the Company owned 1,400,000 shares which are valued at $1,400,000. As of July 31, 2023 and April 30, 2023, the Company has invested $240,080 in an affiliate, 6A Aviation Alaska Consortium, Inc., in conjunction with a land lease in an airport in Alaska. Our Chief Executive Officer is also the Chief Executive Officer of 6A Aviation Alaska Consortium, Inc.

We owe Steven Geary, a director, $31,680 as of July 31, 2023 and April 30, 2023. This obligation is not interest bearing. $16,680 is recorded as a related party trade

> accounts payable and $15,000 as a related party note payable. We have no signed agreements for the indebtedness to Mr. Geary.
>
> Coreen Kraysler, our Chief Financial Officer, has personally guaranteed a $500,000 promissory note from the U.S. Small Business Administration. The note bears interest at an annual rate of 3.75%, has a 30-year term, and monthly payments of $2,437 began on December 17, 2022.

56. The statement in ¶ 55 was materially false and misleading at the time it was made because it did not disclose the agreements with Portfolio Companies AceHedge and Fantize, nor did they disclose Fanning's control over those Companies.

57. On December 14, 2023, the Company filed with the SEC its quarterly report on Form 10-Q for the quarter ending October 31, 2023 (the "FY24 Q2 Report"). Attached to the FY24 Q2 Report were certifications pursuant to SOX signed by Defendants Kay and Kraysler attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

58. The FY24 Q2 report contained the following statement:

> ***Our revenues for the three months ended October 31, 2023, increased by $262,685, or approximately 15%, to $2,041,658, as compared to $1,778,973 during the three months ended October 31, 2022***. The increase in revenues was primarily attributed to an increase in revenue of $278,611 generated by our funding portal. In the three months ended October 31, 2023, we recorded $462,706 in funding portal revenues, consisting of portal fees of $317,206 and listing fees of $145,500, as compared to funding portal revenues of $184,095 in the three months ended October 31, 2022, consisting of portal fees of $97,595 and listing fees of $86,500***. The increase is funding portal revenues in the three months ended October 31, 2023 is primarily attributable to increased offering activity on the platform resulting in higher portal fees due to increased investments in offerings on the portal as well as greater number of offerings on the portal during such period resulting in higher listing fees during the period.***

59. The statement in ¶ 58 was materially false and misleading at the time it was made because the reported revenue growth was inflated by the sham consulting revenue inflated by the

sham consulting revenue from agreements with the Portfolio Companies Defendants knew or should have known about.

60. The FY24 Q2 Report contained the following statement about related party transactions:

> **Note 7 – Related Party Transactions**
>
> The Company's largest shareholder, Netcapital Systems LLC ("Systems"), owns 1,711,261 shares of common stock, or 18% of the Company's 9,459,132 outstanding shares as of October 31, 2023. The company paid Systems $5,000 in the three- and six-month periods ended October 31, 2023, and $50,000 and $150,000 in the three and six months ended October 31, 2022, respectively, for use of the software that runs the website www.netcapital.com.
>
> The Chief Executive Officer of Netcapital Advisors Inc., ("Advisors"), our wholly owned subsidiary, is a member of the board of directors of KingsCrowd Inc. The Company sold 606,060 shares of KingsCrowd in June 2022 for proceeds of $200,000 and recorded a realized loss on the sale of the investment of $406,060 during the six months ended October 31, 2022. As of October 31, 2023 and April 30, 2023, the Company owned 3,209,685 shares of KingsCrowd Inc., valued at $3,209,685.
>
> The Chief Executive Officer of Advisors is a member of the board of directors of Deuce Drone LLC. As of October 31, 2023 and April 30, 2022, the Company owns 2,350,000 membership interest units of Deuce Drone LLC., valued at $2,350,000. The Company has notes receivable aggregating $152,000 from Deuce Drone LLC as of October 31, 2023 and April 30, 2023.
>
> Compensation to officers in the three- and six-month periods ended October 31, 2023 consisted of stock-based compensation valued at $93,526 and $187,058, respectively, and cash salary of $288,700 and $533,017 respectively.
> Compensation to a related party consultant in the three- and six-month periods ended October 31, 2023 consisted of cash wages of $13,854 and $30,017, respectively, and for the three- and six-month periods ended October 31, 2022 consisted of cash wages of $15,000 and $30,000, respectively This consultant is also the controlling shareholder of Zelgor Inc. and $16,500 and $33,000 of the Company's revenues in the three- and six-month periods ended October 31, 2023, respectively, and $16,500 and $27,500 of the Company's revenues in the three- and six-month periods ended October 31, 2022, respectively, were from Zelgor Inc. As of October 31, 2023 and April 30, 2023, the Company owned 1,400,000 shares which are valued at $1,400,000.

> As of October 31, 2023 and April 30, 2023, the Company has invested $240,080 in an affiliate, 6A Aviation Alaska Consortium, Inc., in conjunction with a land lease in an airport in Alaska. The Chief Executive Officer of Advisors is also the Chief Executive Officer of 6A Aviation Alaska Consortium, Inc.
>
> We owe Steven Geary, a director, $31,680 as of October 31, 2023 and April 30, 2023. This obligation is not interest bearing. $16,680 is recorded as a related party trade accounts payable and $15,000 as a related party note payable. We have no signed agreements for the indebtedness to Mr. Geary and accordingly such obligations are not deemed in default. We owe a director of our Netcapital Funding Portal, Inc., $58,524, which is recorded as a related party trade accounts payable, and along with the $16,680 amount due to Mr. Geary, accounts for the total related party trade accounts payable amount of $75,204. The related party trade accounts payable obligations are not interest bearing and are not deemed in default.
>
> During the six months ended October 31, 2022, we paid $12,019 to a related party to retire a note payable of $3,200 and expenses payable of $8,819.
>
> In January 2023 we granted stock options to purchase an aggregate of 1,600,000 shares of our common stock to four related parties as follows: our Chief Executive Officer, Martin Kay, 1,000,000 shares; our Chief Financial Officer, Coreen Kraysler 200,000 shares; our Founder , Jason Frishman, 200,000 shares; and a director of Netcapital Funding Portal, Inc., Paul Riss, 200,000 shares. The options have an exercise price of $1.43, vest monthly on a straight-line basis over a 4-year period and expire in 10 years.
>
> On April 25, 2023, the Company also granted an aggregate of 80,000 options, or 20,000 options each to the following board members: Cecilia Lenk, Avi Liss, Steven Geary and Arnold Scott, to purchase shares of our common stock at an exercise price of $1.40 per share. The options vest monthly on a straight-line basis over a 4-year period and expire in 10 years.
>
> Coreen Kraysler, our Chief Financial Officer, has personally guaranteed a $500,000 promissory note from the U.S. Small Business Administration. The note bears interest at an annual rate of 3.75%, has a 30-year term, and monthly payments of $2,437 began on December 17, 2022.

61. The statement in ¶ 60 was materially false and misleading at the time it was made because it did not disclose the agreements with Portfolio Company StockText, nor did it disclose Fanning's control over the Company.

62. The statements contained in ¶¶ 21, 23, 26, 28, 31, 33, 35, 38, 40, 43, 45, 48, 50, 53, 55, 58, and 60 were materially false and/or misleading because they misrepresented and failed

to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Over the Class Period, Netcapital improperly recognized material revenues from what were, in reality, sham consulting agreements with entities controlled by Defendant John Fanning; (2) the consulting agreements were backdated and in some cases forged, and Netcapital Advisors provided little if any meaningful consulting services; (3) the Portfolio Company transactions were improperly undisclosed related-party transactions involving John Fanning; (4) Netcapital's certifications pursuant to the Sarbanes-Oxley Act of 2002 were false; and (5) as a result, Defendants' statements about Netcapital's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

**<u>THE TRUTH BEGINS TO EMERGE</u>**

63. On August 10, 2026, the SEC filed a complaint against Netcapital, Fanning, Defendant Kraysler, Defendant Kay, Paul Riss, and Cecilia Lenk in the U.S. District Court for the District of Massachusetts, captioned *SEC v. John Fanning, Coreen Kraysler, Martin Kay, Paul Riss, Cecilia Lenk, and Netcapital Inc.*, Civil Action No. 26-13665 (the "SEC Complaint"). The SEC Complaint charged Defendants with conducting a fraudulent scheme to overstate Netcapital's revenue through sham, backdated, and in some cases forged consulting agreements between Netcapital Advisors and at least eleven Portfolio Companies controlled by Fanning.

64. In summary, the SEC Complaint stated the following about Defendants' malfeasance (including the materiality of Defendants' financial fraud to Netcapital's reported revenues, and Defendants' motivation for committing fraud), summarizing the SEC's Complaint:

> This action concerns a fraudulent scheme to overstate the revenue of Netcapital[.] From approximately October 2021 through January 2024 (the "Relevant Period"), Netcapital

> improperly recorded in its books and records (or "recognized") nearly $14 million in revenue from consulting agreements ***between Netcapital and supposed customers of Netcapital's services that were, in fact, controlled by Fanning***. The consulting agreements, some of which were forged, were shams that produced no real revenue for Netcapital. ***The recognition of $14 million in claimed consulting revenue inflated Netcapital's Relevant Period revenue by approximately 345 percent.*** The inflated revenue was included or incorporated by reference in Netcapital's periodic and other reports filed with the Commission and in securities offering materials aimed at investors. While Netcapital's revenue was fraudulently overstated, investors in Netcapital's public and private securities offerings invested over $25.6 million. ***Those investor funds allowed Netcapital to continue operating and facilitated payments to Fanning, Kraysler, Riss, Kay, Lenk, and others.***

65. The SEC Complaint alleged that Netcapital's "***quarterly and annual SEC filings misled investors regarding the related-party nature of the portfolio company consulting agreements***[,]" in violation of ASC 850 and Item 404(a) of Regulation S-K.

66. Specifically, the SEC Complaint alleged that "[a]t no point during the Relevant Period did Netcapital disclose that the Portfolio Company revenue derived from related-party transactions involving Fanning." Further, "[a]s a result of those omissions, Netcapital's related-party disclosures were misleading." Further, the SEC Complaint alleged the following:

> ***Netcapital failed to disclose the Portfolio Company consulting arrangements as related-party transactions notwithstanding that, on the one hand, Fanning controlled the Portfolio Companies and, on the other hand, Fanning acted as an office[r] of Netcapital and was the spouse of Netcapital's CFO***.

67. The SEC Complaint alleges that Defendants Netcapital recognized $502,174 in revenue from a consulting agreement with Portfolio Company Reper in the quarter ending October 31, 2021, even though the agreement was not created until December 1, 2021.

68. The SEC Complaint alleges that Defendants recognized $400,000 in revenue from a consulting agreement with Portfolio Company Cust Corp. in the quarter ending October 31, 2021, even though the agreement was not executed until November 24, 2021.

69. The SEC Complaint alleges that Defendants recognized $975,000 in revenue from

a consulting agreement with Portfolio Company NetWire in the quarter ending April 30, 2022, even though the agreement was not executed until April 28, 2022, two days before the quarter ended.

70. The SEC Complaint alleges that Defendants recognized $700,000 in revenue from a consulting agreement with Portfolio Company Dark in the quarter ending July 31, 2022, even though the agreement was not executed until August 13, 2022.

71. The SEC Complaint alleges that Defendants recognized $780,000 in revenue from a consulting agreement with Portfolio Company CupCrew in the quarter ending January 31, 2023, even though the agreement was not executed until February 6, 2023.

72. The SEC Complaint alleges that Defendants recognized $390,000 in revenue from a consulting agreement with Portfolio Company HeadFarm in the quarter ending January 31, 2023, even though the agreement was not executed until February 7, 2023.

73. The SEC Complaint alleges that Defendants recognized $780,000 in revenue from a consulting agreement with Portfolio Company CountSharp in the quarter ending January 31, 2023, even though the agreement was not executed until February 8, 2023.

74. The SEC Complaint alleges that Defendants recognized $555,000 in revenue from a consulting agreement with Portfolio Company AceHedge in the quarter ending July 31, 2023, even though the agreement was not executed until August 21, 2023.

75. The SEC Complaint alleges that Defendants recognized $555,000 in revenue from a consulting agreement with Portfolio Company Fantize in the quarter ending July 31, 2023, even though the agreement was not executed until August 24, 2023.

76. The SEC Complaint alleges that Defendants recognized $406,667 in revenue from a consulting agreement with Portfolio Company StockText in the quarter ending October 31, 2023,

even though the agreement was not executed until November 2, 2023.

77. In all, the SEC complaint alleges approximately $5.1 million of the $13.9 million in Portfolio Company consulting revenue that Netcapital recognized, approximately 37%, was recognized in periods in which no consulting agreement yet existed.

78. The SEC Complaint also alleged that at least four of the purported consulting agreements between Netcapital Advisors and the Portfolio Companies were forged: those of Portfolio Companies CupCrew, HeadFarm, RealWorld, and CountSharp.

79. As to the Individual Defendants, the SEC Complaint alleged the following:

80. **Defendant Kraysler:** The SEC Complaint alleged that Kraysler, as CFO, reviewed, approved, and certified financial statements that included inflated revenue. The SEC Complaint stated that Kraysler "told Riss how much revenue to book in particular quarters for at least some of the Portfolio Company consulting agreements" and that she "knew or recklessly disregarded that [Netcapital Advisors] was not providing services to the Portfolio Companies commensurate with the revenue it was recognizing." Kraysler also signed management representation letters to Netcapital's auditor falsely denying knowledge of fraud and affirming that revenue-generating contracts had commercial substance.

81. **Defendant Lenk:** The SEC Complaint alleged that Lenk, as CEO, reviewed, approved, and certified financial statements containing inflated revenue. The SEC complaint stated that Lenk "negligently allowed Netcapital to improperly recognize revenue from sham Portfolio Company consulting agreements, including in periods in which no agreements existed and no services were performed."

82. **Defendant Kay**: The SEC Complaint alleged that Kay, as CEO, reviewed, approved, and certified financial statements containing inflated revenue. During the first five fiscal

quarters of his tenure, Netcapital overstated revenue by approximately 436 percent. The SEC Complaint noted that "[d]espite [the] proportion of purported revenue attributable to the Portfolio Companies, Kay was unfamiliar with the Portfolio Companies and their purported managers, had no direct contact with them, and did not understand their businesses or know other basic information about them." Kay also signed management representation letters to Netcapital's auditor falsely denying knowledge of fraud.

83. The SEC Complaint alleged the following about Defendant Fanning:

> Fanning was the common thread between Netcapital and the Portfolio Companies. During the Relevant Period, Fanning acted as a Netcapital officer and was involved in significant operational and strategic decisions, including Netcapital's efforts to raise capital. At the same time, Fanning exercised control over the Portfolio Companies and owned significant amounts of their equity. Rather than own the Portfolio Companies in his own name, Fanning owned them through intermediary companies that he also controlled ("Intermediary Companies"). The Portfolio Companies had titular managers, but in reality those individuals had no involvement with the companies, were unaware of the scope of their purported association with the companies, and/or acted subject to Fanning's direction. ***Fanning knowingly engaged in and directed deceptive acts in furtherance of the scheme, such as the forgery of consulting agreements and other Portfolio Company documents, the appointment of nominee Portfolio Company managers, and the use of the Intermediary Companies to obscure his involvement.***

84. On this news, the price of Netcapital stock fell by just over $0.05, or 12.8%, to close at $0.3501 on August 11, 2026.

85. On August 17, 2026, the Company filed with the SEC a Current Report on Form 8-K disclosing that the Company's independent registered public accounting firm, Fruci & Associates II, PLLC ("Fruci"), had resigned. The 8-K stated the following:

> On August 12, 2026, Fruci & Associates II, PLLC ("Fruci"), the independent registered public accounting firm of Netcapital Inc. (the "Company"), notified the Company that it had resigned as the Company's independent registered public accounting firm, effective immediately. ***Fruci stated that, in light of Securities and Exchange Commission (the "SEC") Litigation Release No. 26607 and the related civil complaint filed against the Company and certain affiliated individuals, Fruci had determined that it could no longer serve as the Company's auditor***.

86. On this news, the price of Netcapital stock fell by $0.0914, or 28.6%, to close at $0.2280 on August 18, 2026.

87. On September 3, 2026, after market close, Netcapital filed with the SEC a Current Report on Form 8-K with the SEC disclosing that on August 27, 2026, Avi Liss had resigned as a member of the Board of Directors, and from all committees of the Board on which he served, including the Audit Committee, effective immediately.

88. In his resignation letter, which was filed as an exhibit to the 8-K, Liss stated that he was resigning "in light of the serious allegations recently asserted against the Company and certain current and former officers, directors, and other individuals" in the SEC Complaint.

89. On this news, Netcapital stock fell $0.0512 per share, or 8.14%, to close at $0.5774 per share on September 4, 2026. The following trading day, Netcapital stock fell a further $0.0759 per share, or 13.1%, to close at $0.5015 per share on September 8, 2026.

90. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

91. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired Netcapital securities publicly traded on the NASDAQ during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of Netcapital, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

92. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Netcapital securities were actively traded on NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

93. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

94. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

95. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;
- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and financial condition of Netcapital;
- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;
- whether the Defendants caused Netcapital to issue false and misleading filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false filings;
- whether the prices of Netcapital securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and
- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

96. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

97. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Netcapital shares met the requirements for listing, and were listed and actively traded on NASDAQ, an efficient market;
- As a public issuer, Netcapital filed periodic public reports;
- Netcapital regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;
- Netcapital's securities were liquid and traded with moderate to heavy volume during the Class Period; and

- Netcapital was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

98. Based on the foregoing, the market for Netcapital securities promptly digested current information regarding Netcapital from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

99. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

**COUNT I**
**For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder**
**Against All Defendants**

100. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

101. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

102. During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

103. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Netcapital securities during the Class Period.

104. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Netcapital were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of Netcapital, their control over, and/or receipt and/or modification of Netcapital's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Netcapital, participated in the fraudulent scheme alleged herein.

105. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Netcapital personnel to members of the investing public, including Plaintiff and the Class.

106. As a result of the foregoing, the market price of Netcapital securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements,

Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Netcapital securities during the Class Period in purchasing Netcapital securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

107. Had Plaintiff and the other members of the Class been aware that the market price of Netcapital securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased Netcapital securities at the artificially inflated prices that they did, or at all.

108. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

109. By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Netcapital securities during the Class Period.

## COUNT II
## Violations of Section 20(a) of the Exchange Act
## Against the Individual Defendants

110. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

111. During the Class Period, the Individual Defendants participated in the operation and management of Netcapital, and conducted and participated, directly and indirectly, in the conduct of Netcapital's business affairs. Because of their senior positions, they knew the adverse non-public information about Netcapital's false financial statements.

112. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to

Netcapital's financial condition and results of operations, and to correct promptly any public statements issued by Netcapital which had become materially false or misleading.

113. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Netcapital disseminated in the marketplace during the Class Period concerning Netcapital's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Netcapital to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Netcapital within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Netcapital securities.

114. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Netcapital.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a) declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b) awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

(c) awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: October 8, 2026

**THE ROSEN LAW FIRM, P.A.**

Joshua Baker, Esq. (BBO # 695561)
Phillip Kim, Esq. (*pro hac vice* to be submitted)
Laurence M. Rosen, Esq. (*pro hac vice* to be submitted)
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: jbaker@rosenlegal.com
philkim@rosenlegal.com
lrosen@rosenlegal.com

*Counsel for Plaintiff*